FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2014 MAY -2  P 4: 40

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

FRANCES GOMILLION,                    :
905 Wingate Drive                     :
Pittsburgh, PA 15205,                 :
                                      :
          Plaintiff,                  :
                                      :
v.                                    :Civil Action No. _1:14-CV-491_
                                      :              (LmB/TCB)
LOGI ANALYTICS, INC.                  :
7900 Westpark Drive                   :
McLean, Virginia  22102               :
                                      :
Serve:                                :
                                      :
CORPORATION SERVICE COMPANY           :
 Bank of America Center, 16th Floor   :
 1111 East Main Street                :
 Richmond, Virginia 23219             :
                                      :
                                      :
          Defendant.                  :

## COMPLAINT FOR DISCRIMINATION

NOW COMES the plaintiff, Frances Gomillion, by counsel, and files her Complaint

for discrimination, and states as follows:

### I.    INTRODUCTION

1.     The plaintiff, Frances Gomillion ("Plaintiff" or "Ms. Gomillion"), an African-

American female, by her attorneys, Richard E. Patrick and the law firm of Jordan, Patrick &

Cooley, LLP, brings this action seeking damages against defendant Logi Analytics, Inc.

("Logi" or "Company")  for committing violations of the Federal Equal Pay Act, 29 U.S.C. §

206 (d) and for compensatory damages, pursuant to 42 U.S.C. § 1981 as amended.

2.      Plaintiff seeks compensatory damages and declaratory relief to secure the protection of and redress the deprivation of rights granted to her by the laws of the United States of America.  She also seeks compensatory and punitive damages, attorneys' fees and costs for violations of rights secured under the Constitution of the United States of America.

## II.   JURISDICTION

3.      The jurisdiction of this Court over these parties and this action is invoked under 29 U.S.C. § 206 (d), et seq., and 28 U.S.C. §§ 1331 and 1343 (4), this being an action authorized by law to redress the deprivation of a civil right.

## III.   VENUE

4.      Venue is proper with this Court because the cause of action arose in this District.

## IV.   PARTIES

5.      Plaintiff, Frances Gomillion, is a citizen of the United States and of the Commonwealth of Pennsylvania, residing at: 905 Wingate Dr. Pittsburgh, PA 15205

6.      Defendant, Logi Analytics, Inc. ("Logi" or "LAI") is a corporation registered to do business in and doing business in the Commonwealth of Virginia from a location at 7900 Westpark Drive, McLean, Virginia 22102.

7.      At all times, the employees of Logi mentioned herein were acting within the scope of their employment, and Logi is responsible for the actions and conduct of those employees.

2

## V.   <u>STATEMENT OF FACTS</u>

9.      Ms. Gomillion started her employment relationship with Logi Analytics in April 2012 as a Recruiter for LogiXML at a salary of $77,000. Ms. Gomillion reported to Kara Svehla, the Director of Human Resources, a white female.

10.      Ms. Gomillion's job was to start and develop a recruiting department at LogiXML. She was promised she would be promoted to Recruiting Manager that at the end of the year.

11.      The then CFO, Adrian Muniz, told Ms. Gomillion, during an interview, that the company was looking to reduce the amount of money spent on outside recruiting by bringing recruiting in-house.

12.      During Ms. Gomillion's first 2 months with the company, she met with all of the hiring managers to understand their talent needs, and she began filling open positions, re-writing job descriptions, and implementing a completely new applicant tracking system (ATS).  After the system was implemented, Ms. Gomillion created a general recruiting framework and fluid methodology (based on organizational needs). She the trained Ms. Svehla and other hiring managers on this process.

13.      Approximately 6 months into her position, Ms. Gomillion and Ms. Svehla started a search to bring in another recruiter due to the great number of new openings. Ms. Svehla requested that Ms. Gomillion write a new job description for the position different from her own, and to submit the description to Ms. Svehla for review.

14. When Ms. Gomillion submitted the new job description, Ms. Svehla told her that she wanted the job description to be different from Ms. Gomillion's because that was how she would distinguish the new recruiter's position from Ms. Gomillion's when the budget and promotion requests were submitted to senior management. This new position carried less responsibilities and fewer duties and called for less experience than the position occupied by Ms. Gomillion.

15. Both Ms. Svehla and Ms. Gomillion were heavily involved in the interviewing and selection process which included the human resources manager, Karen Waits, an African-American female. In the end, Christopher Fair, a white male, was selected for the position.

16. Mr. Fair started his employment with Logi Analytics in approximately October 2012. Shortly thereafter, Ms. Svehla left the company.

17. One week prior to Ms. Svehla's departure, Ms. Gomillion had a private meeting with the CEO, Brett Jackson, a white male, to discuss her concerns about Ms. Svehla's incompetence and experience as an HR Director.

18. Ms. Gomillion told Mr. Jackson that Ms. Svehla had given Mr. Fair a higher base salary of $85,000, and expressed her concern about several other ill-advised actions committed by Ms. Svehla. Ms. Gomillion complained to Mr. Jackson that she was being paid less than Mr. Fair. Mr. Jackson expressed surprise and stated that he had not been aware of the salary difference. Mr. Jackson promised to resolve Ms. Gomillion's salary issue.

4

19.    About two weeks after Ms. Svehla's departure, the company brought in another HR Director – Steven Golsch, a white male, who was also a very good, personal friend of Mr. Jackson's.

20.    In December 2012, about two weeks after Mr. Golsch's arrival, Ms. Gomillion met with Mr. Golsch in his office to discuss her compensation concerns, including the fact that she was being paid less than Mr. Fair. Mr. Golsch told Ms. Gomillion that he had reviewed the company's files and that he had noticed the difference between her salary and that of Mr. Fair and that he would conduct a review and talk with her again.

21.    Neither Mr. Golsch nor Mr. Jackson or anyone else at the company corrected the inequities in Ms. Gomillion's salary.

22.    Ms. Gomillion resigned from the company effective May 10, 2013. Prior to Ms. Gomillion's resignation, Mr. Golsch was delaying Ms. Gomillion's annual review, which was over a month overdue at the time.  In response to several queries from Ms. Gomillion in reference to her salary increase, Mr. Golsch had told Ms. Gomillion, he would discuss her salary increase after he conducted her annual review. When Ms. Gomillion submitted her resignation letter, via email, Mr. Golsch asked her to come to his office. In his office, Mr. Golsch told Ms. Gomillion that he was not surprised by her resignation, and asked her whether she would reconsider. In response, Ms. Gomillion told Mr. Golsch that she resigned because he had refused to resolve the "open issues" related to her salary.  Ms. Gomillion

stayed with the company for 2 full weeks.  During that time, Mr. Golsch did not attempt to

address, or correct the issues regarding the disparity in Ms. Gomillion's pay.

23.     In her position, Ms. Gomillion had more responsibility than Mr. Fair since

she was the person responsible for managing the recruiting process that she had created.

24.     Ms. Gomillion also had more experience and was better qualified than Mr.

Fair.  At the time, Mr. Fair was hired, Ms. Gomillion had approximately 13 years experience

as a recruiter, and Mr. Fair had  only about 7.  When Mr. Fair started, he was assigned to

recruit for the sales organization, Ms. Gomillion supported all technical positions.  Before

Mr. Fair was hired, Ms. Gomillion  recruited for all positions.  As "recruiters," both Ms.

Gomillion and Mr. Fair had similar titles. Industry-wide, technical recruiters, such as Ms.

Gomillion, are usually paid more than sales recruiter, such as Mr. Fair, because of their

greater  depth of knowledge.

25.     Ms. Gomillion performed higher level and more complex duties than Mr. Fair,

and she had more responsibility than he did.

26.     At the time Mr. Fair was hired, he had about 7 years of recruiting experience;

Ms. Gomillion had over 13 years, 8 of which were in leadership and /or management

positions. There was no legitimate basis for paying Mr. Fair more than Ms. Gomillion

27.     Defendant and its employees were aware of the provisions of Federal Fair

Labor Standards Act which require an employer to the same wages for equal work on jobs the

performance of which requires equal skill,  effort, and responsibility, and which are

performed under similar working conditions

6

28.     Throughout her employment with defendant, Ms. Gomilion performed her duties in a satisfactory manner.

29.     Defendant's non-discrimination polices require Defendant to treat all employees in a non-discriminatory fashion.

## VI.   STATEMENT OF COUNTS

**COUNT I- DISCRIMINATION IN VIOLATION OF 29 U.S.C. SECTION 206(d)**

30.     Plaintiff re-alleges paragraphs 1 through 29 of this Complaint and further states that the facts as alleged above constitutes unlawful and intentional discrimination in violation of  29 U.S.C. §206 (d) which prohibits an employer from paying men and women unequally for doing the same work.  Defendant's conduct was willful and intentional since defendant's employees knew the law and knew that they were paying the Plaintiff less than other similarly-situated males and made a conscious decision to pay Plaintiff less in disregard of the law.

31.     Due to the discrimination, retaliation and unfair treatment by the defendant and its employees, plaintiff has suffered and continues to suffer emotional distress, mental anguish, and humiliation, among other things.

32.     Defendant's conduct as described above was intentional, willful, malicious, outrageous and wanton, requiring the award punitive damages.

**COUNT II-   DISCRIMINATION IN VIOLATION OF 42 U.S.C. SECTION 1981 AND 1981a, AS AMENDED**

33.     Plaintiff re-pleads and re-alleges Paragraphs 1-32 above as if fully set forth, and in addition, states that the facts as alleged above constitute discrimination, based on race,

and disparate treatment in violation of 42 U.S.C. §1981, as amended, which prohibits discrimination on the basis of race. But for her race, the Plaintiff would have been paid the same or higher wages than Mr. Fair.

34. The racial discrimination practiced by Defendant deprived the Plaintiff of the equal benefit of the law and interfered with the Plaintiff's employment in violation of 42 U.S.C. §1981, as amended.

## VII. PRAYER FOR RELIEF

35. Wherefore, Plaintiff prays for a judgment in her favor and against the defendant, and that the following relief be awarded to the plaintiff:

1) Issue a declaratory judgment that defendant's acts, policies and practices complained of herein violated plaintiff's rights as secured by 42 U.S.C. §1981 and 29 U.S.C. 206 (d)

2) On Count I for intentional discrimination in violation of 29 U.S.C. 206 (d) compensatory damages in the amount of one hundred thousand dollars ($100,000).

3) On Count II for violation of 42 U.S.C. §1981, as amended, compensatory damages in the amount of three hundred thousand dollars ($300,000).

4) Punitive damages in the amount of one hundred thousand dollars ($100,000).

5) Attorney's fees and costs.

6) Grant such additional relief as the Court deems just and proper.

8

## JURY TRIAL

Plaintiff hereby demands a jury trial on each and every count.

Respectfully submitted,

FRANCES GOMILLION

By Counsel

JORDAN, PATRICK & COOLEY, LLP

By: _____

Richard E. Patrick, VSB #25293
JORDAN, PATRICK & COOLEY, LLP
10560 Main Street
Suite 310
Fairfax, Virginia   22030
(703) 865-8699
(703) 865-8729-fax
rpatrick@jpcattorneys.com

9